UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| MEL FUGATE,<br><br>Plaintiff,<br><br>-against-<br><br>ANGELO J. KINICKI and MCGRAW-HILL GLOBAL EDUCATION HOLDINGS, LLC,<br><br>Defendants. | : | Civil Action No. 1:22-cv-10483 (LGS)<br><br>**~~[PROPOSED]~~ ORDER ON PROTOCOL FOR DISCLOSURE AND PRODUCTION OF ESI AND PAPER DOCUMENT MATERIAL** |

The Parties having agreed to the following terms, and the Court having found that good cause exists for issuance of an appropriately tailored order on the protocol for disclosure and production of electronically stored information ("ESI") and paper document material in the above-captioned action (the "Action"), it is therefore hereby:

ORDERED that this Order on Protocol for Disclosure and Production of ESI and Paper Document Material (the "Order" or "Protocol") shall govern the production of all documents and materials produced by or exchanged among any of the parties in the Action, including those produced in connection with the parties' Rule 26 disclosures and in response to written discovery requests.

## I. PRODUCTION FORMAT:

A. Attachments and Parent-Child Relationships. Separate responsive and not privileged document(s) (the "child") attached to another document (the "parent") shall be produced contemporaneously and sequentially immediately after the parent document. Parent-child relationships (the association between an attachment and its parent document) shall be preserved. Documents embedded inside other documents (*e.g.*, a Word file embedded inside a PowerPoint

file) shall be designated as "attachments" (or words to that effect) to the embedding (parent) file. In the preceding example, the Word document would be designated as an attachment (child) of the PowerPoint file (parent). Range Fields shall include beginning/ending Bates range for parent documents, as well as beginning/ending Bates range for child documents/attachments, or be designated in another appropriate way.

B. Hardcopy or Paper Documents. Where practicable, documents that originally existed in paper form ("Paper Documents" or "Hardcopy Documents") may be produced in an electronic image form (*see* Paragraph C). If such records are converted to electronic form, they will be produced in the same manner (organization and structure) in which they were received. If such records are not converted to electronic form, the parties agree that hardcopy or paper documents will be made available for copying and/or inspection during regular business hours and with reasonable notice. Paper Documents shall be produced as they are maintained in the ordinary course of business, including all separations, attachments, and affixed nonprivileged notes as they existed in the original. In scanning Paper Documents, distinct documents shall not be merged into a single record, and single Documents shall not be split into multiple records (*i.e.*, paper documents shall be logically unitized). Hard copy documents in color should be scanned in color, and scanned color documents should be provided in JPEG file format, as specified further below. The parties will make good faith efforts to unitize documents correctly and address situations where there are improperly unitized documents.

C. Production of Electronically Stored Information ("ESI").

1. The Parties agree to produce ESI as follows:

(a) For all electronically stored documents, the producing party must make reasonable efforts to preserve the integrity of the underlying ESI, i.e., the original

formatting, the metadata (as limited below) and, where applicable, the revision history.

(b) Electronic documents attached to an e-mail shall be produced sequentially immediately after the parent e-mail.

(c) Except for documents produced in native format, the parties shall produce electronic documents as originally created (*i.e.*, either black-and-white or color), as image files in single-page TIFF or JPEG format. As examples, (1) electronic documents originally created in black-and-white shall be produced in black-and-white and (2) electronic documents originally created in color shall be produced in color, so long as production of the document in color would not pose an undue burden or cost on the producing party, and when a black-and-white version would supply all necessary information on the document. Each image shall be endorsed with a Bates number. The TIFF file will be named with the document's beginning Bates number and saved in a folder titled "Images" (with a maximum of 1,000 documents per folder).

(d) Native files shall be produced for all audio files, video files, Excel files, and other native file types which do not readily render into TIFF format. For database records in proprietary systems, the parties shall produce the records in Excel format when practical; to the extent not practical, the parties and their respective vendors shall work together regarding the specifics of the production format for database records. All native files will be produced with a placeholder TIFF image with a Bates number where the document was originally located, along with any confidentiality designation, and the file name of the document. Each native file

will be named with the corresponding unique file name of its TIFF file (i.e. beginning Bates number) and saved in a folder titled "Natives." Where native files require redaction, to the extent practicable they shall be produced in TIFF/JPG format; or where not practicable, in redacted native format, as noted below. The redaction of any material for privilege shall be governed by the applicable rules and case law regarding the privilege and the provisions contained in the Protective Order entered in this action. Documents that are to be produced in native format, but that require redactions may be produced as TIFF images with appropriate portions redacted, or if a TIFF image production is not practicable (*e.g.*, the file is a video or a very large spreadsheet), the producing party may produce a copy of the native file with the appropriate portions replaced with "REDACTED" or a similar mark. If modification of a native file is required for redaction purposes, the metadata information associated with that file should remain unchanged, unless it also requires redactions. For each Document that is redacted, a redaction field will be populated with the word "REDACTED" in the .dat file. Also, the producing party will keep a pristine original copy of the native document.

(e) To the extent practicable, text files (multi-page) will be produced for each original file with the Text file named with the same beginning Bates number as the image version of the file. The text file shall consist of extracted text from the native file, except that, if extracted text is not available or if a document is redacted, OCR-generated text. The text versions of the documents will be saved in a folder titled "Text" (with a maximum of 1,000 text files per folder).

(f) Each TIFF and TEXT file will be reflected in a .dat and .opt load file. The

.dat file shall contain a relative path to the corresponding text file. OCR or extracted text itself should not be included in the .dat file, *e.g.*, PROD001/TEXT001/ABC00015.txt. The load files will be saved in folder titled "Data." The load file will identify the Bates number, document breaks, any attachments, Confidentiality designation (if applicable), and metadata fields. The data load file should be in standard Concordance format (.DAT) using standard Concordance delimiters: Comma ¶ ASCII character (020); Quote þ ASCII character (254); Newline - ® (ASCII 174). The first line of the .DAT file should contain the field names arranged in the same order as the data is arranged in subsequent lines, all date fields should be produced in the mm/dd/yyyy format and may be combined date/time fields, and all produced attachments should sequentially follow the parent document/email. The image load file must be in standard Option (.OPT) format and must reference each TIFF file in the corresponding production, and the total number of TIFF files referenced in the load file must match the total number of image files in the production. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the corresponding image load file for that production. Every image in the delivery volume should be cross-referenced in the image load file, and a separate volume should be created for each piece of media delivered.

(g) Compressed file types (*e.g.*, CAB, .GZ, .TAR, .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual files. The producing party will take reasonable steps, prior to production, to unencrypt

any discoverable ESI that exists in encrypted format (e.g., password protected) and that can reasonably be unencrypted.

(h) The following metadata fields associated with each electronic document will be produced to the maximum extent each metadata field is available:

| | |
|---|---|
| BegBates | Beginning Bates number of a document |
| EndBates | Ending Bates number of a document, inclusive of attachments (the EndBates field should be populated for single-page documents) |
| AttachName | File name of the attachment, with any attachments separated by semi-colon |
| BegAttach | Beginning Bates number of a child document/attachment for each child document/attachment, if more than one |
| EndAttach | Ending Bates number of a child document/attachment for each child document/attachment, if more than one |
| Custodian | Individual from whom the document originated |
| Page Count | Total number of pages in the document |
| Attachment Count | Number of attachments |
| SourceFilePath[1] | The directory structure or path where the original file was stored on the party's source computer system, ending in the filename, if feasible. Any container name (such as ZIP or PST containers) is included in the file path |
| Author | Author field extracted from metadata of native file |
| From | Sender |
| Recipient(s) | Primary recipient(s) of the e-mail message |
| CC | CC recipient(s) of "carbon copies" of e-mail message |
| BCC | Recipient(s) of "blind carbon copies" of email message |
| Subject | Subject field extracted from metadata of native file |
| Sent Date/Time | Date and time e-mail message was sent |
| Received Date/Time | Date and time e-mail message was received |
| Date/Time Created | Date and time native file was created |
| Date/Time Modified | Date and time native file was last modified |
| RecordType | Indicates item type (*e.g.*, email, edoc, attachments, etc.) |
| File Type | Mail or Attachment or individual file |
| File Extension | File extension of document |
| File Name | Name of original file |
| File Size | File size in kilobytes (KB) |
| Confidentiality Designation | Confidentiality or no designation for each document |
| HASH SHA | MD5 OR SHA 1/2 algorithm |

[1] This field may be excluded if the producing party determines it includes information protected by any applicable privilege or immunity or if it is not reasonably feasible to produce.

| | |
|---|---|
| Native Link | Path to native file as produced |
| Text Link | Path to the text file as produced |
| Time Zone | Time zone used when processing data |
| Redacted | User-generated field that will indicate redactions with the word “REDACTED”. Otherwise, blank. |

2. To the extent a custodian’s files do not contain the same metadata fields identified in Paragraph (f) because the custodian uses a non-Microsoft-based operating system (*e.g.*, MacOS), the party shall produce all substantially equivalent metadata fields for that those files.

3. In addition to the metadata described above, where alterations have been made by the parties to static (*i.e.*, TIFF) images (*e.g.*, comments added to Adobe PDF documents include notes, highlights, stamps, Word documents with track changes or comments, or any other markup), non-privileged alterations or mark-ups will be produced to the extent they exist.

4. This Order does not create any obligate to create or manually code fields that are not automatically generated by the processing of the ESI, or that do not exist as part of the original metadata of the document, provided, however, that the producing party must populate, where possible, the (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) Custodian, (f) Native Link, (g) Text Link, (h) Redacted, and (i) Confidentiality Designation fields, if applicable. These fields should be populated for all produced ESI regardless of whether the fields can be populated pursuant to an automated process. To the extent providing these metadata fields is unduly burdensome, the Parties shall meet and confer to determine appropriate solutions.

D. In the event that ESI is produced in native format, such files will be assigned a unique file name or identifier corresponding to their Bates numbers. The producing party shall

provide a placeholder TIFF document at the Bates number where the document was originally located, which placeholder shall correspond with the file name of the native format document.

**II. DE-DUPLICATION**

A. The parties may de-duplicate documents using standard MD5 Hashing or SHA-1 methods. The parties may discharge their confirmation duties and perform e-mail thread de-duplication through standard use of commercially available software.

B. If a producing party chooses to de-duplicate documents, the producing party may only omit from the production documents that are 100% duplicates (*e.g.*, if a document was prepared in several copies, or if additional copies were subsequently made, and any such copies were not identical or are no longer identical by reason of subsequent notation or modification of any kind whatsoever, including, without limitation, handwritten notations on the front or back of the document, all such existing non-identical copies shall be produced). De-duplication shall not break apart families and shall be performed at a family level. If any member of a family group is produced, all members of that group must also be produced, logged as privileged, or slip-sheeted as non-responsive, and no such member shall be withheld from production as a duplicate.

**III. OBLIGATIONS OF THE PARTIES**

A. Nothing in this Protocol shall be construed to change the parties' obligations or rights under the Federal Rules of Civil Procedure, the Federal Rules of Evidence, or Judge Schofield's relevant practice standards.

B. This stipulated ESI Protocol shall have no effect on any producing party's right to seek reimbursement for costs associated with the collection, review, or production of documents or ESI.

C. Nothing in this stipulated ESI Protocol shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity, or to limit a party's right to conduct a review of documents or ESI for relevance, responsiveness, and/or segregation of privileged and/or protected information before production, irrespective of the electronic search terms or other technologies used to identify potentially relevant documents or ESI. The parties do not waive any objections, including objections to the production, discoverability, admissibility, or confidentiality of documents and ESI.

## IV. FAILURE TO ADHERE TO PROTOCOL

A. If any party materially fails to adhere to the provisions of this Protocol, that party shall, upon request, remedy any such failure as soon as practicable and at that party's own expense.

## V. MODIFICATION OF PROTOCOL

A. The parties agree that this Protocol was agreed upon based upon the information available at the time that it was executed by the parties and may be subject to modification in the future. Any party may file a motion to seek individual relief from this Protocol, including for reasons of undue or excessive costs.

B. If this Protocol does not address a situation or an issue, the parties shall meet and confer to resolve any confusion or disputes.

So Ordered.

Dated: March 16, 2023
New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

THIS ORDER ISSUED this ___ day of March 2023.

BY THE COURT:

____________________________________________

The Honorable Lorna G. Schofield
United States District Court Judge

APPROVED AND SUBMITTED ON MARCH 15, 2023:

DAVIDWOLFLAW pllc

*/s/ David B. Wolf*
David B. Wolf
One Grand Central Place
60 East 42nd Street, Suite 4700
New York, NY 10165
Telephone: (917) 678-2864
Facsimile: (212) 485-9809
Email: david@davidwolflaw.com

SHERMAN & HOWARD L.L.C.

*/s/ Peter G. Koclanes*
Peter G. Koclanes
Jon R. Tandler (*admitted pro hac vice*)
Nicholas M. DeWeese (*admitted pro hac vice*)
675 Fifteenth Street, Suite 2300
Denver, Colorado 80202
Telephone: (303) 297-2900
Facsimile: (303) 298-0940
Email: pkoclanes@shermanhoward.com
jtandler@shermanhoward.com
ndeweese@shermanhoward.com

*ATTORNEYS FOR PLAINTIFF MEL FUGATE*

OSBORN MALEDON

*/s/ Colin M. Proksel*
Colin M. Proksel (*admitted pro hac vice*)
2929 N. Central Ave., Ste. 2000
Phoenix, AZ 85012
Telephone: (602) 640-9000
Facsimile: (602) 640-9050
Email: cproksel@omlaw.com

KLEINBERG KAPLAN

*/s/ Steven R. Popofsky*
Steven R. Popofsky
Alisa Benintendi
Kleinberg Kaplan Wolff Cohen, P.C.
500 Fifth Avenue, Floor 38
New York, NY 10110
Telephone: (212) 986-6000
Facsimile: (212) 986-8866
Email: spopofksy@kkwc.com
abenintendi@kkwc.com

*ATTORNEYS FOR DEFENDANT ANGELO J. KINICKI*

HOLLAND & KNIGHT LLP

*/s/ Sean C. Sheely*
Sean C. Sheely
Stoch M. Silivos
31 West 52nd Street
New York, NY 10019
Telephone: (212) 513-3200
Facsimile: (212) 385-9010
Email: sean.sheely@hklaw.com
stosh.silivos@hklaw.com

*ATTORNEYS FOR DEFENDANT MCGRAW-HILL GLOBAL EDUCATION HOLDINGS, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 15, 2023, a true and correct copy of the foregoing was electronically filed through the Court's CM/ECF System with service upon the following:

Sean C. Sheely, Esq.
Stosh M. Silivos, Esq.
Holland & Knight LLP
31 West 52nd Street
New York, NY 10019
Email: sean.sheely@hklaw.com
*Counsel for Defendant McGraw-Hill Global Education Holdings, LLC*

Colin M. Proksel, Esq.
Osborn Maledon
2929 N. Central Ave., Ste. 2000
Phoenix, AZ 85012
Email: cproksel@omlaw.com
*Counsel for Defendant Angelo J. Kinicki*

Steven R. Popofsky, Esq.
Alisa Benintendi, Esq.
Kleinberg Kaplan
500 Fifth Avenue
New York, NY 10110
Email: spopofksy@kkwc.com; abenintendi@kkwc.com
*Counsel for Defendant Angelo J. Kinicki*

*/s/ Donna L. Fouts*
Donna L. Fouts, Practice Assistant